**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 03-4191

MICHAEL BRAD MAGLEBY,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
(D.C. NOS. 2:02-CV-00469-DB and      2:98-CR-565-DB)**

Paul Victor Jorgensen, Middletown, Maryland, (Michael Wein, Greenbelt, Maryland, with him on the brief) for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **HENRY** , **HARTZ** , and **McCONNELL** , Circuit Judges.

**HARTZ** , Circuit Judge.

On the evening of September 6, 1996, Michael Brad Magleby had five friends over to his house for a barbecue. *United States v. Magleby*, 241 F.3d 1306, 1308 (10th Cir. 2001) (opinion on direct appeal). They talked about how

they disliked people of other races and they listened to music and viewed web sites that expressed a similar view. *Id.* Eventually Mr. Magleby told his friends about a group from the Kingdom of Tonga that had recently moved into the neighborhood. *Id.* Mr. Magleby and his minor friend L.M. resolved to burn a cross at the Tongans' house. *Id.*

That night Mr. Magleby and L.M. built a cross, spray-painted it black, and purchased gasoline with which to douse it. *Id.* at 1309. They then proceeded to the Tongans' house. *Id.* But before Mr. Magleby could take the cross out, L.M. spotted several men outside the house. *Id.* In light of their presence, Mr. Magleby and L.M. decided that it would be unwise to carry on with the cross burning. *Id.* Instead, L.M. told Mr. Magleby about a house in which (here the evidence was disputed) either a "crackhead" or an African American lived and at which they could burn the cross. *Id.* Mr. Magleby and L.M. proceeded to burn the cross outside that house, which turned out to be the home of an interracial couple and their child. *Id.* The Government conceded that Mr. Magleby did not know anything about the residents until L.M. told him about them that night. *Id.*

On December 10, 1999, Mr. Magleby was convicted of burning and conspiring to burn a cross outside the home of an interracial couple, in violation of 18 U.S.C. § 241 (conspiracy to violate civil rights) and 42 U.S.C. § 3631 (violation of civil rights). *Id.* His sentence was enhanced under 18 U.S.C.

-2-

§ 844(h)(1) for use of fire in the commission of the § 241 conspiracy. *Id.* We affirmed the conviction on the grounds raised on appeal. *Id.* at 1320.

Mr. Magleby then filed a motion for habeas corpus relief under 28 U.S.C. § 2255 in the United States District Court for the District of Utah. The district court denied the motion. Mr. Magleby now appeals that denial, contending that (1) the jury instructions permitted convictions for constitutionally protected speech; (2) § 844(h)(1) is unconstitutional as applied because it specially punishes symbolic speech that uses fire; and (3) a § 844(h)(1) enhancement does not apply to a § 241 conspiracy unless fire was used in the process of agreement. None of these contentions was raised on direct appeal. But Mr. Magleby contends that they were so obvious at the time of direct appeal that the failure to raise them constituted ineffective assistance of appellate counsel, in which case Mr. Magleby is not procedurally barred from raising them on collateral review. We exercise jurisdiction under 28 U.S.C. § 2255 and affirm.

## I.    Jury Instructions

Mr. Magleby contends that the jury instructions did not convey that he could be convicted only if his cross burning constituted a threat of unlawful violence to identifiable persons, as required by the First Amendment, *see Virginia v. Black*, 538 U.S. 343, 359 (2003). Before addressing the particular instructions at issue, we must describe the underlying First Amendment law.

Free-speech protection is not limited to views tolerable to a majority. Only two years ago the Supreme Court reaffirmed that cross burning may be speech protected by the First Amendment. *See Black*, 538 U.S. at 360. But what would ordinarily be protected speech may, in context, cross the line—here, the line between political statement and threat of unlawful violence. *See id.* at 359-60. Unprotected by the Constitution are threats that communicate the speaker's intent to commit an act of unlawful violence against identifiable individuals. *Id.* at 359. The threat must be made "with the intent of placing the victim in fear of bodily harm or death." *Id.* An intent to threaten is enough; the further intent to carry out the threat is unnecessary. *Id.* at 360.

Mr. Magleby contends that the jury instructions in his case were contrary to the legal principles announced in *Black*. But he missed his best opportunity to raise this issue—namely, on his direct appeal. Ordinarily, this failure would bar a habeas corpus challenge. *See United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not. To overcome this procedural bar, Mr. Magleby must show cause for and prejudice from his failure to raise his jury-instruction challenge on direct appeal. *See id.*

As cause, he claims ineffective assistance of appellate counsel. *See id.*; *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001). Ineffective assistance of

counsel exists when (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The burden of proof on these elements lies with Mr. Magleby. *Id.*

To evaluate this claim, we must examine the state of the law at the time of Mr. Magleby's direct appeal—which was decided on March 7, 2001—and the specific circumstances of this case. We conclude that Mr. Magleby did not receive ineffective assistance of appellate counsel, that he therefore fails to establish cause, and that his jury-instruction claims are therefore procedurally barred.

## A.    Law at the Time of Direct Appeal

Mr. Magleby now relies on *Black*. But his counsel on direct appeal can hardly be faulted for not pointing out the requirements of *Black*, which was decided two years after our decision in Mr. Magleby's appeal. To determine whether Mr. Magleby's counsel was ineffective, we must look to earlier precedent. The parties join in referring us to a line of decisions in the Eighth Circuit, which largely anticipated *Black*; we agree with them that these decisions are Mr. Magleby's best hope.

The seminal decision is *United States v. Lee*, 6 F.3d 1297, 1298 (8th Cir. 1993) (en banc) (plurality op. of Gibson, J.), in which the defendant burned a cross outside a mixed-race apartment building and was convicted under § 241. The district court instructed that a threat could include "a variety of conduct intended to harm, frighten, punish, or inhibit the free action of other persons" and did not require "a threat of physical force or the intimidation of physical fear." *Lee*, 6 F.3d at 1300 (plurality op. of Gibson, J.). The *en banc* court reversed, holding that a threat was protected by the Constitution, and therefore could not be the basis of a criminal conviction, unless it was a threat of "the use of imminent force or violence." *Id.* at 1304; *see id.* (Lay, J., concurring and dissenting); *cf. United States v. Pospisil*, 186 F.3d 1023, 1028 (8th Cir. 1999) (upholding § 241 conviction when "jury was instructed not to convict . . . without a finding that the defendant acted with the intent to threaten . . . the [victims] with physical force or violence" because "[t]his instruction was consistent with instructions mandated by our decisions involving prosecutions for cross burning under section 241" (internal quotation marks omitted) (citing *Lee*)).

*United States v. McDermott*, 29 F.3d 404, 409-10 (8th Cir. 1994), applied *Lee* strictly. In that case the jury instruction at issue required that "defendants . . . have acted by force or threat of force," and defined *force* as "power, violence, compulsion or restraint exerted upon or against a person or

thing." *Id.* at 409. But the instruction went on: "[I]f you find beyond a reasonable doubt that the defendants burned a cross in order to threaten African–Americans, you may conclude that a threat of force was used." *Id.* This addition was fatal. The court wrote:

> [T]he Count II instructions permitted the jury to conclude that a threat of force was used if it found that McDermott "burned a cross in order to threaten." By wording [the] [i]nstruction . . . in permissive terms, however, the court allowed the jury to convict without finding that the McDermotts burned the cross with the intent to threaten the use of force or at least cause blacks to reasonably fear the imminent use of force or violence. These instructions do not square with . . . *Lee*, and constitute reversible error.

*Id.* at 410 (internal citations omitted). Because one could threaten action other than the use of force, burning a cross to threaten is not the same as burning a cross to threaten *the use of force*; but the instructions conveyed that the former would suffice, and so did not accurately state the law.

No reported federal appellate case contrary to the Eighth Circuit decisions had been decided at the time of Mr. Magleby's direct appeal.

**B.      Application of the Law to the Jury Instructions**

We now examine the jury instructions in this case to determine whether the failure to challenge them on First Amendment grounds on appeal, in light of the state of the law at the time, was objectively unreasonable. Had Mr. Magleby challenged the jury instructions on direct appeal, we would have reviewed de novo whether the instructions as a whole accurately conveyed the applicable law.

*See Gardetto v. Mason*, 100 F.3d 803, 816-17 (10th Cir. 1996) (applying instructions-as-a-whole test in context of First Amendment challenge). An unfortunate sentence, misleading on its own, is not dispositive; in context, such a sentence might be so clarified that the instructions as a whole nonetheless convey the law accurately. *See United States v. Platte*, 401 F.3d 1176, 1183 (10th Cir. 2005). Applying this standard, we hold that the likelihood of success in challenging the jury instructions on First Amendment grounds on direct appeal was not so great that counsel's failure to make the challenge "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

### 1. Instructions on the § 3631 Charge

On the § 3631 charge, instruction 27 states:

> In order to establish the offense described by Section 3631 . . . the Government must prove these five elements beyond a reasonable doubt:

First:      *The defendant used force or threat of force;*

Second:      The defendant intimidated or interfered with, or attempted to intimidate or interfere with the right of Ron Henry and Robyn Henry [the interracial couple] to occupy [their] dwelling . . . ;

Third:      The defendant engaged in the conduct described because of the race or color of one or both Ron Henry and Robyn Henry and because one or both Ron Henry and Robyn Henry were attempting to occupy their home free from racial discrimination;

Fourth:      The defendant acted willfully;

-8-

Fifth: The defendant's conduct involved the use of fire, that is erecting and setting on fire a cross.

Jury Instr. No. 27 (emphasis added), Aplt. App. at 81. Instruction 28 elaborates:

> The term "force" includes the exercise and application of physical power. In common usage force means power, violence, compulsion, or restraint exerted upon or against a person or thing.
>
> The term "threat of force" means precisely what the term implies—namely, a threat, either by words or gestures, to inflict some harm. While "force" itself requires some physical manifestation of violence, "threat of force" falls short of actual violence and ordinarily signifies the expression of one person's intention to act against another or to do some harm. As I instructed you before [in Instruction No. 22, on the § 241 charge—see below], to threaten or intimidate does not require the possibility of physical force or physical harm.
>
> . . . [I]f you find that a defendant participated in burning a cross and you find that the defendant intended by the cross burning to threaten or frighten the victims, then you may find that he used force or the threat of force. The Government need not prove that the defendant actually intended to carry out the threat.

Jury Instr. No. 28, Aplt. App. at 82.

Mr. Magleby raises two challenges to these instructions. First, after summarizing the Eighth Circuit precedents, he complains that "[t]he trial court defined 'force' to include any form of 'compulsion, or restraint exerted against a person or thing.'" Aplt. Br. at 22. But he provides absolutely no explanation why this language is troubling, except to say that it is "overbroad," apparently because it did not require the threat of physical violence or force. *Id.* The complete language of the pertinent paragraph of the instruction, however, was: "The term 'force' includes the exercise and application of physical power. In common usage

-9-

force means power, violence, compulsion, or restraint exerted upon or against a person or thing." Jury Instr. No. 28, Aplt. App. at 82. In the context of Mr. Magleby's trial, the flaw in this paragraph, if any, is not immediately apparent to us. The natural reading of the language in the instruction is that it is referring to physical force.

Mr. Magleby's second complaint is that "[t]he court also explained: 'As I instructed you before, to threaten or intimidate does not require the possibility of physical force or physical harm.'" Aplt. Br. at 22. Again, however, the only thing he claims to be wrong with the sentence is that it is "overbroad." *Id.* If there is a flaw, it is a subtle one. The sentence appears in a paragraph of the instructions devoted to the distinction between a *threat* of force and the actual *use* of force. Given that the elements instruction told the jury that it must find that "[t]he defendant used force or threat of force," Aplt. App. at 81, the quoted sentence can best be understood as explaining that the government need not prove that the threat of force could or would actually be carried out. *See Black*, 538 U.S. at 359–60 (intent to carry out the threat is unnecessary).

Reading the § 3631 instructions as a whole, we do not think that the failure of Mr. Magleby's counsel on direct appeal to raise a First Amendment challenge to the instructions "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688. Perhaps an appeal on this ground would have

succeeded, but counsel could also reasonably fear that the issue was more likely to distract the appellate court's attention from issues with a greater likelihood of success. Although we now know that this court rejected all the issues raised on direct appeal, those issues were not frivolous. It took a published opinion occupying 12 pages of text in the reporter to dispose of them. *See Magleby*, 241 F.3d at 1308-20.

### 2. Instructions on the § 241 Charge

On the § 241 charge the district court instructed the jury:

Section 241 . . . has three elements . . . :

First:     That a conspiracy, agreement, or understanding existed;

Second:     That the defendant knowingly and intentionally became a member of the conspiracy, agreement, or understanding;

Third:     That the purpose of the conspiracy, agreement or understanding was willfully to oppress, threaten or intimidate Ron Henry and Robyn Henry in the free exercise or enjoyment of the right to occupy their dwelling, or home, without intimidation or interference because of race.

Jury Instr. No. 18, Aplt. App. at 69. The district court went on:

> The words "oppress," "threaten" or "intimidate" are not used in any technical sense; they are to be understood in their ordinary meaning to cover a variety of conduct intended to threaten or frighten other persons or to prevent or punish the free action of other persons. To oppress, threaten or intimidate does not require the possibility of physical force or of physical harm.

In this case, the Government has alleged that the plan and purpose of the defendant's conspiracy was to burn a cross in the Henry family's yard. If you find that there was a conspiracy whose plan was to burn a cross, and you find that the conspirators intended the cross burning to threaten, frighten or harass the victims, then you may find that the conspirators willfully acted "to oppress, threaten, and intimidate" within the meaning of the law.

Jury Instr. No. 22, Aplt. App. at 76.

We agree with Mr. Magleby that these instructions are flawed. They never define *threat* as requiring a threat of force; to the contrary, they assert that *oppress*, *threaten*, and *intimidate* are used in their everyday sense. Many acts short of unlawful violence may constitute oppression or intimidation in the everyday sense of these words. As Judge Richard Arnold put it:

> If, instead of burning a cross . . . the defendant had distributed leaflets . . . stating that the Ku Klux Klan was in the neighborhood, disliked black people, and wanted them to move out, the black residents . . . could well have been threatened or intimidated in the sense allowed by the District Court's instructions to the jury in this case.

*United States v. Lee*, 935 F.2d 952, 960 (8th Cir. 1991) (R. Arnold, J., dissenting), *rev'd en banc,* 6 F.3d 1297 (8th Cir. 1993).

But it is not always objectively unreasonable for appellate counsel to forego a challenge to an improper instruction. Counsel may believe that the error is likely to be considered harmless. That likelihood is considerable here. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52. Even the omission in a jury instruction of

-12-

an essential element of the crime is subject to harmless-error review. *See Neder v. United States*, 527 U.S. 1, 7-15 (1999).

The flaw in the § 241 instructions is that they did not require the jury to find that Mr. Magleby conspired to threaten the use of *force*. But, as previously explained, the jury's verdict on the § 3631 charge almost surely reflected a finding that Mr. Magleby's cross burning constituted a willful threat of force. Because the cross burning was the only object of the alleged § 241 conspiracy, it would be passing strange if the jury did not believe that Mr. Magleby and L.M. had conspired to threaten *force*. *Cf. Henderson v. Kibbe*, 431 U.S. 145, 156-57 (1977) (omission of instruction on element does not affect verdict when element was found under separate instruction).

An additional factor in determining whether appellate counsel was ineffective is the absence at the time of the appeal of any authority from the Supreme Court or this circuit adopting the law set forth in the Eighth Circuit cross-burning decisions. In light of all the relevant considerations presented to us, we cannot say that it was objectively unreasonable for Mr. Magleby's appellate counsel not to raise First Amendment challenges to his convictions under §§ 241 and 3631.

## II.    The § 844(h)(1) Enhancement

We next turn to Mr. Magleby's contentions that (1) the § 844(h)(1) enhancement was unconstitutional as applied to him because it specially punishes his symbolic speech and (2) the enhancement did not apply to him because he used fire only to achieve an object of his § 241 conspiracy, not to achieve the agreement itself. Section 844(h)(1) provides:

> Whoever—
>     (1) uses fire or an explosive to commit any felony which
>     may be prosecuted in a court of the United States, . . .
> shall, in addition to the punishment provided for such felony, be
> sentenced to imprisonment for 10 years. In the case of a second or
> subsequent conviction under this subsection, such person shall be
> sentenced to imprisonment for 20 years.

## A.    First Amendment Challenge

The only difference between a § 844(h)(1) conviction and conviction of the underlying felony is that the § 844(h)(1) conviction requires the use of fire or an explosive. Mr. Magleby contends that the enhancement of his sentence under § 844(h)(1) is unconstitutional as an abridgment of the freedom of speech because it specially punishes his symbolic use of fire. He relies on *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992). In that case the statute at issue stated:

> Whoever places on public or private property a symbol, object,
> appellation, characterization or graffiti, including, but not limited to,
> a burning cross or Nazi swastika, which one knows or has reasonable
> grounds to know arouses anger, alarm or resentment in others *on the
> basis of race, color, creed, religion or gender* commits disorderly
> conduct and shall be guilty of a misdemeanor.

-14-

*Id.* at 380 (emphasis added).  The Minnesota Supreme Court construed the statute as reaching only "fighting words."  *Id.* at 380.   Nevertheless, the United States Supreme Court held that the statute was unconstitutional because it prohibited only *some* fighting words based not on their being especially offensive, but only on the point of view that they are used to express.  *Id.* at 393–94.

Mr. Magleby's reliance on *R.A.V.* ignores, however, that the Supreme Court opinion made clear that a content-based distinction within a class of proscribable speech is permissible when the basis of the distinction is the same as the basis for proscribing the class of speech as a whole—for example, Congress may choose to ban only the most obscene obscenity.  *Id.* at 388. Section 844(h)(1) appears to make this type of distinction.  It increases the punishment for certain felonies because they are especially pernicious.  In particular, felonious threats perpetrated through the use of fire exhibit to a higher degree than other felonious threats the characteristics that make threats proscribable.  Threats made using fire—which has the potential not only to frighten in a distinctly profound way but also itself to cause the threatened harm to person or property—are particularly threatening threats.  Accordingly, it is highly questionable whether it is an abridgment of the freedom of speech to single out threats employing fire for special punishment. *See Black*, 538 U.S. at 363 ("The First Amendment permits Virginia to outlaw cross

burnings done with the intent to intimidate because burning a cross is a particularly virulent form of intimidation.").

In view of the doubtful success of this First Amendment challenge to § 844(h)(1), we hold that failure to raise the challenge on direct appeal did not constitute ineffective assistance of counsel.

**B.     § 844(h)(1)'s Applicability to § 241 Conspiracy**

Section 844(h)(1) proscribes the "use[] [of] fire or an explosive *to commit any felony*" (emphasis added). Mr. Magleby contends that the § 844(h)(1) enhancement for use of fire in commission of the § 241 conspiracy was improper because the crime of conspiracy was complete on agreement and fire was not used in achieving agreement—thus fire was not used *to commit* conspiracy.

In support of Mr. Magleby's argument, the *en banc* Seventh Circuit has held that § 844(h)(1) does not apply to a conspiracy offense that does not require an overt act unless fire was used in the process of agreement, because the conspiracy is complete—and thus "committed"—once the agreement is achieved. *See United States v. Colvin*, 353 F.3d 569, 575–76 (7th Cir. 2003) (en banc). We are not sure that we would embrace *Colvin*. Conspiracy is often described as a *continuing* offense, encompassing the acts performed in furtherance of the agreement. For example, venue is proper wherever acts in furtherance of the conspiracy occur, regardless of whether an overt act must be proved. *See United*

*States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59, 252 (1940); *United States v. Miller*, 111 F.3d 747, 753 n.8 (10th Cir. 1997). Similarly, under Fed. R. Evid. § 801(d)(2)(E), which provides that a coconspirator's statement "during the course and in *furtherance* of the conspiracy" is not hearsay, the statement need not further the *attainment* of an agreement; it is enough that it further an *object* of the agreement. *See United States v. Mabry*, 809 F.2d 671, 683–684 (10th Cir. 1987) *overruled on other grounds by Matthews v. United States*, 485 U.S. 58 (1988). And for statute-of-limitations purposes, a non-overt-act conspiracy is not committed simply on the date the agreement is made but "is deemed to continue as long as its purposes have neither been abandoned nor accomplished, and no affirmative showing has been made that it has terminated." *United States v. Arnold*, 117 F.3d 1308, 1313 (11th Cir. 1997). Here, the jury was instructed that to convict it must find that "[t]he defendant intentionally used fire in the commission and furtherance of the Count I conspiracy" and that "[t]he Count I conspiracy was in existence at the time defendant used fire . . . and the defendant was a member of the conspiracy at that time." Aplt.'s App. at 88.

In any event, we need not resolve this issue today. Mr. Magleby is barred from raising it in this habeas proceeding because he did not raise it on direct appeal. *See Cook*, 45 F.3d at 392. He could escape this procedural bar only by

-17-

showing cause for his failure to do so. *See id*. His sole argument in this regard is that his appellate counsel was ineffective. We are not persuaded.

Whatever the merits of Mr. Magleby's § 844(h)(1) contention, it was not so obvious at the time of his direct appeal that counsel's failure to raise it was unreasonable. No decisions had yet adopted his view. At the time of the appeal—which was decided on March 7, 2001—even the Seventh Circuit applied § 844(h)(1) to non-overt-act § 241 conspiracies. *See United States v. Hartbarger*, 148 F.3d 777, 785-86 (7th Cir. 1998) ("We hold that the district court properly concluded that 18 U.S.C. § 844(h)(1)'s sentencing enhancement for using fire to commit any federal felony applies to cross burnings in violation of 18 U.S.C. § 241."). *But cf. United States v. Lee*, 935 F.2d at 958 (legislative history shows that § 844(h)(1) use-of-fire enhancement is applicable only to arson).

Mr. Magleby nonetheless argues that it was unreasonable not to raise this contention on appeal because the district judge had pointed it out at trial. But Mr. Magleby misreads the transcript. The district judge, in a colloquy with government counsel, did express doubt about the applicability of § 844(h)(1). Later, however, the district judge concluded that conspiracy was a continuing offense and that § 844(h)(1) would apply if the jury found beyond a reasonable doubt that the use of fire was in furtherance of the conspiracy. This conclusion

did not turn on the incorrect belief that § 241 requires an overt act: the district judge expressly recognized that § 241 does not require an overt act.

Consequently we hold that failing to raise the inapplicability-of-§ 844(h)(1) contention on direct appeal was not ineffective assistance of counsel and that we therefore cannot reach this contention on collateral review.

## III.    CONCLUSION

We AFFIRM the district court's denial of the § 2255 motion.